UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| JAMES OFFORD AND<br>PATRICIA OFFORD | CIVIL ACTION |
|---|---|
| VERSUS | NO. 07-8704 |
| UNITED STATES GYPSUM CORPORATION,<br>SEACOAST SUPPLY, AND L&W SUPPLY<br>CORPORATION | SECTION "N" (4) |

## ORDER AND REASONS

Presently before the Court is the Motion for Summary Judgment filed by Defendants, United States Gypsum Corporation ("U.S. Gypsum") and L&W Supply Corporation d/b/a Seacoast Supply ("Seacoast") (Rec. Doc. No. 36). Subsequent to the filing of Defendants' motion, Plaintiffs, James Offord and Patricia Offord, advised the Court that they do not oppose the motion insofar as it applies to Plaintiffs' claims against U.S. Gypsum. With respect to Seacoast, the Court, for the reasons stated herein likewise finds the motion to have merit. Accordingly, **IT IS ORDERED** that Defendants' motion for summary judgment is **GRANTED**. **IT IS FURTHER ORDERED** that Plaintiffs' claims against Defendants, U.S. Gypsum and Seacoast, are **DISMISSED WITH PREJUDICE**.

## I. Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have

submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

## II. <u>Analysis</u>

On October 13, 2006, Plaintiff James Offord ("Offord"), a truck driver, was badly injured when he slipped and fell from atop an "18-wheeler" trailer load of stacked sheetrock. At the time of his accident, Offord, who was employed by Western Express, was attempting to remove the

3

second of two large tarps covering the sheetrock. U.S. Gypsum had contracted with Western Express to transport the load from the U.S. Gypsum plant in New Orleans, Louisiana, to Seacoast's River Road facility in nearby Jefferson, Louisiana. Although Offord was not required to load or unload the sheetrock from the trailer, he was responsible for removing the tarps covering the load for inspection, and then unloading, by Seacoast personnel.

Generally, when sufficient space was available, Offord would uncover his loads simply by pulling off the tarps from where he stood on the ground. It is undisputed that, on the date of the accident, the Seacoast delivery lot provided ample room for that exercise. Offord, however, was successful in removing only one tarp from the loaded flatbed trailer from the ground. The second tarp, which covered the rear portion of the load, seemingly had become snagged on part of the load, the equipment used to secure it, or the trailer itself. Thus, unable to simply pull the rear tarp off the trailer from his vantage point on the ground, Offord climbed on top of the trailer bed, and then the load, hoping to discover and remedy the problem.

Unfortunately, in doing so, Offord slipped on the Visqueen (heavy plastic) sheet, which served to waterproof the load, that covered the sheetrock underneath the two tarps. The Visqueen sheet had become wet, and thus slippery, from rain. Losing his balance, Offord fell to the ground and, as a result, suffered severe head and spinal cord injuries.

Limited to workers' compensation benefits relative to his employer, Western Express, Offord filed this suit, asserting negligence claims against U.S. Gypsum and Seacoast. As previously indicated, however, only Plaintiffs' claims against Seacoast remain in dispute. Plaintiffs essentially contend that Seacoast, as the recipient of the goods, should have warned Offord against climbing on top of his load, prohibited him from climbing it while on Seacoast's premises, provided

4

safety "fall" equipment for him to use in climbing and standing upon the slippery plastic, and/or offered other assistance that would have allowed the second tarp to be removed from the ground. In making these arguments, Plaintiffs emphasize that Seacoast would not accept and unload deliveries of sheetrock until the delivery driver had first untarped them for inspection.

Having carefully reviewed all of the parties' submissions, as well as the applicable law, the Court finds that, given the particular facts and circumstances presented in *this* case, Seacoast can bear no liability relative to Plaintiffs. Specifically, the Court finds that, in this instance, Seacoast was not obligated to take additional, affirmative actions designed to ensure that Western Express's driver – particularly in the absence of a request for assistance from the driver – was able to untarp his load without getting on top of it or, if he did, that he utilized proper fall protection safety equipment.

First, at the time of the accident, Offord was an employee of an independent contractor, *i.e.*, Western Express. Although Plaintiffs' proffered expert, Jason English, asserts that Seacoast should be treated as an employer for OSHA purposes, and thus obligated to utilize the same safety precautions required for its own direct employees, Plaintiffs have not demonstrated why, under these factual circumstances, that arguably is true. This is significant because, under Louisiana law, a principal generally bears no tort liability for the negligent act of an independent contractor committed in the course of performing contractual obligations. *See, e.g., Roberts v. Cardinal Servcs., Inc.*, 266 F.3d 368, 380 (5th Cir. 2001), *cert. denied*, 535 U.S. 954, 122 S. Ct. 1357 (2002); *Graham v. Amoco Oil Co.*, 21 F.3d 643, 645 (5th Cir.1994). Exceptions to this rule do apply when the independent contractor is engaged in ultra-hazardous activities, or the principal retains

operational control over the independent contractor's actions, or expressly or impliedly authorizes the negligent acts. *Roberts,* 266 F.3d at 380; *Graham,* 21 F.3d at 645.

Here, however, the facts presented to the Court for consideration establish only that Seacoast ordered a load of sheetrock from U.S. Gypsum, that U.S. Gypsum contracted with Western Express to deliver the sheetrock to Seacoast, that Western Express employees covered the load with plastic and tarps for weather protection, and that Seacoast employees would accept and unload the sheetrock if its condition was found satisfactory upon inspection. There is no evidence that Seacoast dictated the manner in which the tarps were to be removed from the load. To the contrary, its standard procedure was simply to provide adequate space for untarping, and otherwise rely upon the expertise of the delivery drivers to accomplish this task in accordance with their training, their employer's directives, and any requirements imposed by the contractual arrangement between the shipper and transportation company. No evidence has been presented establishing that different rules applied in this instance.

Thus, on the facts presented by the parties' submissions, it cannot be said that Seacoast retained operational control as to how Western Express completed the untarping component of its delivery of materials to Seacoast's facility for inspection and acceptance, or expressly or impliedly authorized its conduct. *See, e.g., Graham,* 21 F.3d at 646-47 (discussing when operational control or authorization exists); *Hebert v. CXY Energy, Inc.*, 72 F. Supp. 2d 681, 686-87 (W.D. La. 1999) (discussing operational control). Indeed, Western Express, as Offord's employer, could have imposed its own restrictions as to how its drivers were to untarp the loads, could have provided them with fall protection equipment (and required U.S. Gypsum to arrange ready access to any necessary on-site anchoring), and/or could have made an assistant available to

6

its drivers when needed. Unfortunately, Western Express apparently took none of these precautionary measures. Nor were they made Seacoast's responsibility as part of its agreement with U.S. Gypsum.

Furthermore, Offord did not consult with Seacoast as to how he should proceed in removing the tarps once he encountered a problem with the second one. Instead, he alone made the decision to climb up on the stacked, uneven load *and*, significantly, to move about it even after he discovered that the exposed portion of the plastic covering was wet. He did not request any assistance from a Seacoast employee in freeing the tarp, or the use of fall protection or other safety equipment.[1] Nor did he propose delaying the untarping, inspection, and unloading until such time as the plastic covering might have dried, or a second Western Express employee could have arrived to provide assistance, or he had consulted with his Western Express supervisor as to how he should proceed under those circumstances. Absent such a request, Seacoast cannot be faulted, at least under these circumstances, for not agreeing to alternative measures or a brief delay.

Offord's deposition testimony in this matter does not suggest the contrary. Indeed, he consistently testified that untarping the load was part of *his* job, that he always untarped alone at Seacoast, where he'd been many times before, that there was plenty of room at Seacoast to untarp and for a forklift to unload, and that there was no reason that Seacoast should have trained him regarding untarping.[2] He also explained that he, not someone at Seacoast, decided how to remove

---

[1] *See* July 17, 2008 Transcript of Plaintiff James Kerry Offord, Exhibit A to Defendants' Motion for Summary Judgment (Rec. Doc. No. 36) at page 31.

[2] *See* July 17, 2008 and December 10, 2008 Transcripts of Plaintiff James Kerry Offord, Exhibits A and B to Defendants' Motion for Summary Judgment (Rec. Doc. No. 36) at pages 33, 189, 191, and 218.

the tarps, that he did not walk (on the ground) around the truck trailer to attempt to discover the problem with the second tarp, that no one forced or directed him to climb up on the load or did anything that caused him to be on the load, that Seacoast did not cause him injury, and that he had noticed the plastic sheet was wet when he climbed up on the load.[3]

Significantly, moreover, the hazardous condition encountered by Offord was not one as to which Seacoast employees had superior knowledge and/or experience. To the contrary, the possibility of slipping and falling from an elevated, uneven load of sheetrock, particularly one covered with a wet plastic sheet, is an "open and obvious" risk to any reasonable person, and certainly an experienced truck driver of more than 18 years, like Offord. *Cf. Eisenhardt v. Snook*, ___ So.2d ___, 2009 WL 796327, *3 (La. 3/17/09) ("defendants generally have no duty to protect against an open and obvious hazard"). Indeed, Offord, being the only person on the truck bed and the load, was better aware of their conditions than anyone else at the Seacoast facility at the time immediately preceding the accident.

What is more, although climbing atop a covered load may not be the most desirable and safest manner in which to untarp, it is not ultra-hazardous conduct and, from the evidence presented, apparently is done fairly often in the industry, or at least by Western Express drivers. For example, Offord testified that it frequently is necessary for him to do this when the receiver does not have a unloading area large enough to accommodate untarping from the ground.[4] Although it may

---

[3] *See* July 17, 2008 and December 10, 2008 Transcripts of Plaintiff James Kerry Offord, Exhibits A and B to Defendants' Motion for Summary Judgment (Rec. Doc. No. 36) at pages at pages 31, 74, 77, 109, and 215.

[4] *See* December 10, 2008 Transcript of Plaintiff James Kerry Offord, Exhibit B to Defendants' Motion for Summary Judgment (Rec. Doc. No. 36) at pages 217 and 226. Offord further testified that in climbing on the load on the day of the accident, he was untarping in the

8

be safer, and even preferable, for receivers to prohibit this conduct, as U.S. Gypsum apparently does, the Court is not convinced, based on the materials presented, that receivers are legally obligated to do so. The same is true with respect to receivers providing and/or requiring use of fall protection equipment.[5]

Finally, Plaintiffs cite *Crane v. Exxon Corp.,* 613 So. 2d 214 (La. Ct. App. 1 Cir. 1992), apparently to support the contention that, even if not otherwise owed, Seacoast had *assumed* a duty of care to Offord relative to untarping, and then failed to perform that duty as it should. For much the same reasons as previously stated, the Court disagrees. In *Crane,* Exxon assumed a duty by reserving a right to inspect the site and monitor compliance with its job and safety specifications, *and* then actually exercising this right by appointing someone to supervise the project and reprimanding the contractor's employees for safety violations. 613 So. 2d at 221. The purpose of this task was to protect the contractor's employees. *Id*.

Comparable facts have not been demonstrated to exist here. Seacoast did not purport to direct Offord, an experienced truck driver employed by an independent contractor, how to untarp his load and/or establish the safety precautions for doing so. Nor does the fact that Seacoast's handbook, *relative to its own drivers and trucks when away at a jobsite*, instructs the drivers to utilize fall protection, and to protect fellow employees and others working around them, translate into an assumption of a duty with respect to independent contractor drivers delivering to the

---

manner expected – whether reasonably or not – by Western Express. *Id*. at 192.

[5] Offord testified that none of the places to which he delivered provided fall protection equipment for the delivery drivers. *See* December 10, 2008 Transcript of Plaintiff James Kerry Offord, Exhibit B to Defendants' Motion for Summary Judgment (Rec. Doc. No. 36) at page 221.

9

Seacoast facility, as argued by Plaintiffs.[6] Plaintiffs also highlight a deposition statement by Ted Gill, Seacoast's safety director in Chicago, indicating that Seacoast employees, working at the Seacoast facility, "should" tell third-party drivers, who are standing on a trailer load while attempting to untarp it, to "get down," if and when they have knowledge of such conduct.[7] Mr. Gill's statement apparently is not reflected in any written policies or procedures distributed to warehouse employees or posted at the Seacoast facility in question. In any event, while the Court acknowledges the wisdom of Mr. Gill's statement, the Court does not agree that this deposition statement alone translates into a prior assumption, or acknowledgment, of a legal obligation of care owed to a third-party employee of an independent contractor.

## III. Conclusion

The Court recognizes and regrets that James Offord undisputedly suffered severe and tragic injuries as a result of his fall. That being said, the Court does not find a legal and factual basis for allowing this dispute to proceed to trial. Quite simply, Offord's failure to take precautions when faced with obvious risk, combined with Western Express's seemingly lax driver/untarping policies and procedures, resulted in an unfortunate accident. Offord's remedy, albeit limited, is found in

---

[6] *See* "L&W Safe Behavior Job Observation Descriptions", Exhibit C to Seacoast's Reply to Plaintiffs' Supplemental Opposition Memorandum to Defendants' Motion for Summary Judgment (Rec. Doc. No. 87).

[7] *See* May 28, 2009 Transcript of Deposition of Ted Gill, Exhibit A to Seacoast's Reply to Plaintiffs' Supplemental Opposition Memorandum to Defendants' Motion for Summary Judgment (Rec. Doc. No. 87) at pages 66-67.

workers' compensations benefits provided by his employer. Accordingly, for these and the foregoing reasons, **IT IS ORDERED** that Defendants' motion for summary judgment (Rec. Doc. No. 36) is **GRANTED**. **IT IS FURTHER ORDERED** that Plaintiffs' claims against Defendants are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 17th day of June 2009.

_____
KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE